UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN R. SANDOVAL,<br><br>           Plaintiff,<br><br>     v.<br><br>THE CITY OF PARLIER, *et al.*,<br><br>           Defendants. | 1:07-CV-00102 OWW SMS<br><br>ORDER RE DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS (DOC. 50 & 52) |

I.  INTRODUCTION

On January 18, 2007, Plaintiff Juan R. Sandoval filed a complaint against the City of Parlier and Defendant Parlier City Police Officer Rene Jimenez, seeking damages for civil rights violations and various state law torts.  The City of Parlier was dismissed from the action after the pretrial conference.  On July 3, 2008, after a seven day trial, a jury returned a verdict in favor of Defendant Jimenez and against Plaintiff on all counts.

Before the court for decision is Defendant's motion for an award of attorneys fees and costs, pursuant to Federal Rule of Civil Procedure 65, in the amount of $99,217.25, reflecting costs and fees incurred during the entire litigation.  Doc. 52 at 1-2. In the alternative, Defendant requests a fee award in the amount

1

of $86,107.50, reflecting fees and costs incurred after depositions were completed in September 2007.  *Id*. at 2.

## II.  BACKGROUND

Plaintiff's complaint alleged that on March 9, 2006, at the Administration Office Board Room of the Parlier Unified School District, Plaintiff was tasered by two Parlier Police Department Officers, including Defendant Jimenez.  Doc. 1, Compl., at ¶7. Plaintiff alleged that Officer Jimenez failed to follow Parlier Police Department "Use of Taser" Policy because Plaintiff did not present an immediate, credible threat to the safety of the officers or the public; Plaintiff was "at worst engaged in a passive demonstration;" Defendant failed to announce that the Taser was going to be used; and Defendant unnecessarily applied the Taser multiple times.  *Id.* at ¶8.  The Complaint alleged the following causes of action:  (1) excessive force in violation of Title 42 U.S.C. § 1983, against Defendant Jimenez in his official capacity; (2) supervisory liability under section 1983 against the City of Parlier; (3) assault and battery against Defendant Jimenez; (4) intentional infliction of emotional distress against Defendant Jimenez; and (5) negligence against Defendant Jimenez.

Defendant Jimenez did not move to dismiss the complaint, nor did he move for summary judgment prior to trial.  All claims against the City of Parlier were dismissed prior to trial.  Doc. 36, filed June 24, 2008.  A seven day jury trial commenced June 24, 2008.  Docs. 38, 40, 41-44.

The evidence at trial established that, on March 9, 2006, at the Administration Office Board Room of the Parlier Unified

School District ("PUSD"), the PUSD Board of Directors (the "Board") held a regularly scheduled meeting, attended by many citizens.

Plaintiff, who at the time was both employed by the School District and was a parent of at least one child attending school within the District, desired to address the Board in his capacity as a parent about the District's budget and Bilingual Education program. Prior to the meeting, Plaintiff submitted a form requesting that his name be added to the list of persons who would be allowed to speak during the public comment portion of the meeting. Plaintiff was a regular speaker at the meetings. According to Board policy, he was allotted five minutes to speak.

When it was Plaintiff's time to speak, Plaintiff, who is bilingual, chose to give his comments in Spanish. Slightly less than 3 minutes after his name was called, Plaintiff was interrupted so that his statements could be translated. Plaintiff asked, in English, if someone was going to translate. The PUSD superintendent, Dr. Elizondo, replied: "Would you like to translate or would you like to have somebody translate?" Plaintiff stated that he would like to have someone translate, then asked if the translation would "be part of my minutes?" Dr. Elizondo confirmed that it would. Plaintiff responded: "Ok then I'll wait until I am finished because I don't want it to be part of my minutes." Elizondo replied: "You have two minutes to finish up."

Precisely 4 minutes and 9 seconds after his name was called, Plaintiff was interrupted and the translator was asked to begin his translation. The translator finished translating 5 minutes

and 17 seconds after Plaintiff's name was called.  Although Plaintiff testified that he had completed saying everything he had to say to the Board, when the translator was done, Plaintiff refused to cede the dais.  After a brief argument regarding the need for Plaintiff to sit down and allow the meeting to proceed, the PUSD staff security guard was called, but was unable to convince Plaintiff to cede the dais.

Plaintiff stated that he was not done with his public comments.  Dr. Elizondo reiterated that Plaintiff's time was up and directed the Board President, Yolanda Montalvo to call a recess.  Montalvo called a recess and ordered that the audio recording device be turned off.  Plaintiff then demanded that the recording device not be turned off and requested a transcript of the proceedings.  Elizondo then directed Montalvo to summon the police and the audio recording device was turned off.

Defendant Officer Jimenez arrived on the scene after receiving a call from dispatch that someone was disrupting the meeting.  Officer Jimenez spoke briefly with Montalvo and Elizondo, then approached Plaintiff and asked him to step outside.  Plaintiff asked Defendant Jimenez what the charges were.  Defendant Jimenez responded that there were no charges.

According to Officer Jimenez, Jimenez asked Plaintiff several times to accompany him outside.  When Plaintiff refused to comply, Jimenez placed his right hand around Plaintiff's left wrist and told Plaintiff to walk out or he was going to be placed under arrest.  Jimenez requested that dispatch send another unit to his location.  Jimenez then took out his taser and advised Sandoval that if he did not comply, Jimenez would use the taser

4

against him.[1]

Jimenez also testified that Plaintiff challenged Jimenez to use the taser and spoke loudly to the audience in a manner that caused Officer Jimenez to believe Plaintiff was attempting to incite a riot. Jimenez perceived that the audience was "anti-police."

Plaintiff recalls the interaction differently, testifying that shortly after Jimenez approached him, Jimenez grabbed Plaintiff's shoulder, unprovoked, in an attempt to remove him from the room.

A scuffle then ensued, the exact nature of which was disputed. According to the responding officers, Plaintiff, who has martial arts training, struck Officer Jimenez and attempted to knock him down. In response, the taser deployed against Plaintiff. Plaintiff testified that he put up no resistance and was tasered twenty times. However, the physical evidence and taser reports indicated that he was tasered no more than five times. Eventually, one of the Board members convinced Plaintiff to stop resisting, enabling the officers to then place Plaintiff under arrest.

The jury returned its verdict, in favor of Defendant Jimenez on all counts, on July 3, 2008. Doc. 48, filed July 7, 2008. Defendant Jimenez filed his motion for attorneys fees and costs July 16, 2008, Doc. 50, and amended that motion July 17, 2008,

---

[1] The Parlier Police Department has a written policy regarding the use of tasers by its officers. The taser policy states that tasers should not be used against passive demonstrators.

Doc. 52.

### III. **ANALYSIS**

Eastern District of California Local Rule 54-293 governs the award of attorney's fees in this district.  A motion for attorney's fees must include an affidavit of counsel showing:

>   (1)   that the moving party was a prevailing party, in whole or in part;
>
>   (2)   the moving party is eligible to receive an award of attorneys' fees, and the basis for such eligibility;
>
>   (3)   the amount of attorneys' fees sought;
>
>   (4)   the information pertaining to each of the criteria set forth in subsection (c) of this Rule; and
>
>   (5)   such other matters as are required under the statute under which the fee award is claimed.

*Id.*

A district court may award attorneys' fees pursuant to 42 U.S.C. § 1988 to a prevailing civil rights defendant only if the plaintiff's action was "unreasonable, frivolous, meritless, or vexatious." *Galen v. County of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007).  An action may be deemed frivolous "when the result appears obvious or the arguments are wholly without merit."  *Id.* (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)).  A defendant may recover if this standard is violated "at any point during the litigation, not just at its inception."  *Id.* (citing *Christiansburg*, 434 U.S. at 422).  In determining whether this standard has been met, a district court must avoid "post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been

6

unreasonable or without foundation." *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1060 (9th Cir. 2006).

> This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Christiansburg*, 434 U.S. at 422. A Defendant seeking attorney's fees has the burden of establishing that the action is frivolous or vexatious. *Klotz v. United States*, 602 F.2d 920, 924 (9th Cir. 1979).

Defendant argues that "the evidence known to Plaintiff prior to the time this action was filed[] was sufficient to put Plaintiff on notice that his action was frivolous." Doc. 52 at 3. Specifically, Defendant asserts that "[n]one of the witnesses [at trial] gave statements which supported Plaintiff's recollection of the facts. Indeed each of the witnesses [who] watched Defendant's interaction with Plaintiff [and testified were] entirely consistent in refuting Plaintiff's version of the facts." *Id.* Defendant further argues that "Plaintiff should have known that numerous credible eyewitnesses would testify to facts that were in stark contrast to those facts necessary to the success of Plaintiff's claims," and "[b]ecause this information was available to Plaintiff long before his action was filed, Plaintiff should have known that he had no chance of success and

should not have filed the action." *Id.* at 3-4.[2]

"A claim is not necessarily frivolous because a witness is disbelieved or an item of evidence is discounted, disproved or disregarded at trial." *Am. Fed'n of State, County and Mun. Employees, AFL-CIO v. County of Nassau*, 96 F.3d 644, 652 (2d Cir. 1996). Where a plaintiff, through his own testimony, presents evidence in support of his claims, fees may nevertheless be appropriate if that testimony was "an unmitigated tissue of lies" and/or the lawsuit was "motivated by malice and vindictiveness." *Id.*

Here, although Defendant's motion for attorneys fees notes the absence of any testimony to <u>corroborate</u> Plaintiff's version of the facts, Defendant makes no mention of and does not provide the court with Plaintiff's trial testimony. Although it was ultimately not given credit by the trier of fact, Plaintiff's testimony arguably supported his allegation that Defendant

---

[2] Defendant argues that a claim may be deemed frivolous if there is an abundance of case law suggesting the claim has no merit, citing *Int'l Bhd. of Teamsters v. Silver State Disposal Serv., Inc.*, 109 F.3d 1409, 1412 (9th Cir. 1997). Silver State actually stands for a distinct principle: that a claim is less likely to be considered frivolous when there is very little case law directly apposite. However, even if Silver State is read as Defendant suggests, it is not applicable here. Although, as Defendant points out, "there is an abundance of legal precedent on the issue of the use of force and excessive force under the [Fourth] Amendment and the Civil Rights Act" and "[t]he Penal Code is [] very clear in describing a citizen's responsibility upon being placed under arrest...," the various Fourth Amendment standards are highly fact-intensive, and the frivolousness of any given claim will largely turn on the presence or absence of facts, rather than the existence of parallel case law. The key question here is whether Plaintiff had any facts to support his claims.

8

unjustifiably deployed his taser against a passive demonstrator in violation of Department policy.  There is no basis for a finding that Plaintiff's testimony was "an unmitigated tissue of lies" or that his lawsuit was "motivated by malice and vindictiveness."  Although the jury ultimately concluded that Plaintiff was unreasonable, stubborn, and unduly contentious as to his insistence that he could address the Board on his own terms in disregard of the rules, Defendant has failed to demonstrate that this is the type of civil rights case that warrants an award of attorney's fees to Defendant.  However, Defendant shall recover his costs of suit as authorized by law.

## IV. CONCLUSION

Defendant's motion for attorney's fees is DENIED.

**IT IS SO ORDERED.**

**Dated:   February 13, 2009**            /s/ Oliver W. Wanger
                                       **UNITED STATES DISTRICT JUDGE**